SKC

**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony L. Rodrigues, | No. CV 14-08141-PCT-DGC (ESW) |
| Plaintiff, | |
| v. | **ORDER** |
| Charles L. Ryan, et al., | |
| Defendants. | |

Plaintiff Anthony L. Rodrigues, who is currently confined in the Red Rock Correctional Center (RRCC) in Eloy, Arizona, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 and the Americans with Disability Act (ADA) (Doc. 15). Pending before the Court are (1) "Plaintiff's Motion for Preliminary Injunction and Emergency Temporary Restraining Order" (Doc. 21), (2) "Defendants Ryan and Diaz's Rule 12(b)(6) Motion to Dismiss Plaintiff's Second Amended Complaint" (Doc. 29), and (3) "Defendants' [Ryan, Diaz, Marquardt, and Rider's] Motion to Dismiss Plaintiff's Second Amended Complaint" (Doc. 66).

The Court will deny Plaintiff's Motion for Preliminary Injunction for lack of jurisdiction, deny as moot Defendants Ryan and Diaz's Motion to Dismiss, and grant in part and deny in part Defendants' Motion to Dismiss.

## I. Background

This action arises from alleged constitutional and ADA violations that occurred while Plaintiff was incarcerated at the Arizona State Prison Complex (ASPC)-Kingman. (Doc. 15.) In his two-count Second Amended Complaint, Plaintiff names as Defendants Charles L. Ryan, Director of the Arizona Department of Corrections (ADC); R. Scott Marquardt, President and CEO of Management Training Corporation; Tara R. Diaz, ADC Contract Beds Bureau Director; and Pamela Rider, Warden at ASPC-Kingman's Hualapai Unit. (*Id.* at 2.) Plaintiff seeks monetary, injunctive, and declaratory relief, and punitive damages. (*Id.* at 11.) On screening pursuant to 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated Eighth Amendment and ADA claims in Count Two and directed Defendants to answer these claims. (Doc. 16.) The Court dismissed the claims in Count One and the remaining claims in Count Two. (*Id.*)

Plaintiff's claims in Count Two are based on the following allegations. Plaintiff has a documented cardiac condition for which he is receiving treatment. On November 26, 2013, Plaintiff was sanctioned for two unexcused absences from a life skills class. As a result, Plaintiff lost his preferred housing and was reassigned to a two-man bunk in the rear of the dorm, near where inmates smoked, despite ADC policies prohibiting indoor smoking. After his housing reassignment, Plaintiff was hospitalized at least twice due to the effects of second-hand smoke. Plaintiff sought a "reasonable accommodation" from Defendants. In particular, he made requests from at least January 2, 2014 to be reassigned to a new bunk away from the smoking, but he was not moved to a new bunk – apparently away from the smoking – until June 2014. (Doc. 15.)

## II. Plaintiff's Motion for Injunctive Relief

In his Motion for Injunctive Relief, Plaintiff alleges that following a July 2015 riot at ASPC-Kingman, he was transferred to RRCC, and, as a result, he lost access to legal reference materials and his trial preparation journal and case notes. (Doc. 22 at 3.) He further alleges that he has been subjected to the same ADA violations he encountered at ASPC-Kingman, including lack of access to smoke free housing and outdoor recreation,

and, as a transferee, he is not given equal access to RRCC's legal library as are non-transferred inmates. (*Id.*) Plaintiff alleges that all of his efforts to resolve these issues with RRCC officials have failed to provide any relief, and this lack of response contributed to his hospitalization on August 11, 2015. (*Id.*)

Plaintiff requests that the Court "enjoin the Defendant(s), Defendants' Agent, [and] Contract Representatives or Appointees to immediately provide the Plaintiff access to non-punitive smoke free housing and outdoor recreation and opportunities enjoyed by similarly situated individuals at Plaintiff's current place of incarceration." (Doc. 21 at 1-2.) He additionally requests that Defendants and their agents be restrained from (1) transferring Plaintiff from his current place of incarceration without first seeking permission from the Court, (2) taking any retaliatory actions against Plaintiff or those who provide him material support in this action, and (3) interfering with Plaintiff's access to the Court, right to discovery, and access to legal reference materials necessary to advance his claims. (*Id.* at 2.)

### A. Legal Standard

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted) ("[a] preliminary injunction is an extraordinary remedy never awarded as of right"). A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. "But if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th

1    Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th
2    Cir. 2011)).  Under this serious questions variant of the *Winter* test, "[t]he elements . . .
3    must be balanced, so that a stronger showing of one element may offset a weaker
4    showing of another." *Lopez*, 680 F.3d at 1072.

5         Regardless of which standard applies, the movant "has the burden of proof on each
6    element of the test." *See Envtl. Council of Sacramento v. Slater,* 184 F. Supp. 2d 1016,
7    1027 (E.D. Cal. 2000).  Further, there is a heightened burden where a plaintiff seeks a
8    mandatory preliminary injunction, which should not be granted "unless the facts and law
9    clearly favor the plaintiff." *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1441
10   (9th Cir. 1986) (citation omitted).

11        The Prison Litigation Reform Act imposes additional requirements on prisoner
12   litigants who seek preliminary injunctive relief against prison officials and requires that
13   any injunctive relief be narrowly drawn and the least intrusive means necessary to correct
14   the harm.  18 U.S.C. § 3626(a)(2); *see Gilmore v. People of the State of Cal.*, 220 F.3d
15   987, 999 (9th Cir. 2000).

16        A court may issue an injunction against a non-party only where the non-party acts
17   in active concert or participation with an enjoined party.  Fed. R. Civ. P. 65(d)(2) (a
18   preliminary injunction only binds those who receive actual notice of it by personal
19   service or are parties, their officers, agents, servants, employees, and attorneys, and
20   persons in active concert); *see Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1984) ("A
21   federal court may issue an injunction if it has personal jurisdiction over the parties and
22   subject matter jurisdiction over the claim; it may not attempt to determine the rights of
23   persons not before the court."); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*,
24   395 U.S. 100, 110 (1969).

25        **B.**    **Discussion**

26        Defendants Ryan and Diaz argue that Plaintiff's Motion must be denied because
27   (1) Plaintiff seeks relief outside the operative complaint, and (2) Plaintiff fails to establish

the necessary elements to justify injunctive relief. (Doc. 85.) For the reasons that follow, the Court finds the first argument dispositive and will deny the Motion.

According to Plaintiff's allegations, RRCC is a private prison under contract with ADC to which Plaintiff was transferred in July 2015. (Doc. 22 at 1, 3.) Thus, the injunctive relief Plaintiff seeks at RRCC in the form of a bunk reassignment, restrictions on transfer, and access to legal materials is completely separate from the relief he seeks for Defendants' alleged violations at ASPC-Kingman in the Second Amended Complaint. Plaintiff appears to rely on the asserted factual similarities of the alleged indoor smoking at both prisons as a basis for seeking injunctive relief at his current place of confinement. But absent any facts causally connecting the actions of Defendants in this action to the alleged violations at RRCC, mere similarity of potential future claims does not authorize the Court to order relief outside the scope of the current action. "A court's equitable power lies only over the merits of the case or controversy before it. When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015); *see also De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) (preliminary injunctive relief is inappropriate for matters "lying wholly outside the issues in the suit."). The Court will deny Plaintiff's Motion for Injunctive Relief for lack of jurisdiction.

**III.    Defendants Ryan and Diaz's Motion to Dismiss**

Defendants Ryan and Diaz filed their Motion to Dismiss on October 9, 2015 (Doc. 29), before the Court issued a Scheduling Order in which it gave Defendants until December 21, 2015 to file any motions to dismiss. (Doc. 35 at 3.) On November 24, 2015, Defendants Ryan and Diaz filed a Motion to Stay, requesting that the Court stay the pending Motion so they and Defendants Marquardt and Rider could file a single motion to dismiss. (Doc. 53.) The Court granted the Motion to Stay (Doc. 70), and all Defendants filed a single Motion to Dismiss on December 21, 2015 (Doc. 66). Because

1  that Motion supersedes Ryan's and Diaz's prior Motion, the Court will deny Defendants
2  Ryan and Diaz's Motion to Dismiss as moot.
3  . . . .

### IV. Defendants' Motion to Dismiss

#### A. Motion to Dismiss Legal Standard

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Dismissal of the complaint, or any claim within it, may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id*. at 681.

In determining whether a complaint states a claim under this standard, the allegations in the complaint are taken as true and the pleadings are construed in the light most favorable to the nonmovant. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007). A court may not consider evidence outside the pleadings unless it converts the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment and gives the nonmovant an opportunity to respond. Fed. R. Civ. P. 12(d); *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). A court may, however, consider documents

1  attached to the complaint or incorporated by reference in the complaint, or matters of
2  judicial notice, without converting the motion into one for summary judgment. *Ritchie*,
3  342 F.3d at 908.

### B. Plaintiff's Section 1983 Claims

To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

To state an Eighth Amendment conditions-of-confinement claim, plaintiffs must meet a two-part test. "First, the alleged constitutional deprivation must be, objectively, sufficiently serious" such that the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations omitted). Second, the prison official must have a "sufficiently culpable state of mind," i.e., he must act with "deliberate indifference to inmate health or safety." *Id.* (internal quotations omitted). Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Id.* at 835. In defining "deliberate indifference" in this context, the Supreme Court has imposed a subjective test: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference." *Id*. at 837 (emphasis added).

Defendants argue that Plaintiff's Eighth Amendment claims should be dismissed because he fails to allege sufficient facts to show he suffered a "specific injury as a result of the conduct of any particular defendant" and his allegations are insufficient to show that any Defendant acted with deliberate indifference. (Doc. 66 at 9-11.) The Court already screened the Second Amended Complaint and found that Plaintiff alleged

sufficient facts to state Eighth Amendment claims against all Defendants. (Doc. 16.) The standard for dismissal under Rule 12(b)(6) is identical to the standard applied on screening under § 1915A(b) ("fail[ure] to state a claim upon which relief may be granted") and does not call for a new evaluation. *See Murray v. Corr. Corp. of Am.*, CV 11-2210-PHX-RCB (JFM), 2012 WL 2798759 (D. Ariz. July 9, 2012) (Rule 12(b)(6) motion to dismiss almost never appropriate when the court has screened a prisoner complaint pursuant to § 1915A(b)). The Court also noted, however, that Plaintiff's Counts were largely intertwined, and Plaintiff brought Fifth, Eighth, and Fourteenth Amendment and ADA claims in both counts. (*Id.* at 3.) Due to the lack of clarity caused by the overlapping nature of Plaintiff's claims, and in light of the Court's dismissal of Count One and the related claims in Count Two, the Court will review the allegations in the Second Amended Complaint, specifically with respect to Plaintiff's Eighth Amendment claims.[1]

The relevant allegations are as follows: Plaintiff suffers from chronic vascular heart disease. (Doc. 15 ¶ 12.) On November 26, 2013, he was sanctioned and moved from a one-person cell to a two-man bunk in an area at the rear of the dorm known for illicit drug use, indoor smoking, and poor air circulation. (*Id.* ¶ 14.) These environmental conditions – made known to all Defendants on multiple occasions prior to and after November 2013 through inmate letters and grievances, verbal complaints by security staff, and internal audits and inspections – posed an immediate risk to Plaintiff's health. (*Id.* ¶ 15.) Plaintiff requested a bunk reassignment from security staff and medical personnel, but his requests were denied. (*Id.* ¶ 16.) Plaintiff was hospitalized twice after his move due to cardiac-related complications resulting from the alleged environmental conditions. (*Id.* ¶ 22.) Plaintiff filed a formal complaint, requesting what he styled to be a "reasonable accommodation" to be moved to a single-man cell to

---

[1] Defendants appear to argue that because the Court dismissed Count One, they need only consider Plaintiff's allegations in Count Two. (Doc. 66 at 3; Doc. 90 at 2.) The Court does not agree. Dismissal of Count One does not negate all the factual allegations in that section of the Complaint. Moreover, Plaintiff incorporates these allegations by reference in Count Two. (Doc. 15 ¶ 28.)

- 8 -

eliminate his exposure to airborne contaminants, including second-hand smoke.  (*Id*. ¶ 31.)  On April 2, 2014, Rider denied Plaintiff's request on the grounds that he did not have an ADC-recognized disability that required accommodations.  (*Id*.)  Plaintiff filed an inmate grievance appeal, alleging that Rider had, without consultation with Plaintiff's cardiologist and contrary to Plaintiff's treatment plan, ignored the risk to his health that had resulted in two stress-related hospitalizations.  (Doc. 15 ¶ 32.)  On April 18, 2014, Diaz affirmed Rider's denial on appeal and noted, among other things, that Plaintiff had not sufficiently documented his claims and that ASPC-Kingman staff regularly discipline inmates caught smoking in unauthorized areas.  (*Id*.)  Plaintiff appealed Diaz's decision to Director Ryan, alleging that Diaz's conclusions were "wholly self[-]appreciating" and "deliberately indifferent" to Plaintiff's need to limit his exposure to second-hand smoke.  (*Id*. ¶ 33.)  Ryan affirmed Diaz's decision and informed Plaintiff that he could choose to inform prison staff of smoking violations but he would not be moved without a demonstrated "medical necessity."  (*Id*.)

### 1. Rider, Diaz, Ryan

Defendants argue that Plaintiff's Eighth Amendment claims against Rider, Diaz, and Ryan fail because Plaintiff does not link any viable injuries to the conduct of these Defendants.  (Doc. 66 at 10.)  They argue that the only substantive injuries Plaintiff alleges are that, after he was moved to a two-man bunk in November 2013, he was hospitalized twice for cardiac complications due to second-hand smoke.  (*Id*.)  They further maintain that because Plaintiff does not allege more precisely when these hospitalizations occurred, and his allegations show that he did not submit any bunk reassignment requests to Defendants until March 2014, he cannot plausibly link his injuries to Defendants' denials of those requests.  (*Id*.)  These arguments miss the mark.  Even if Defendants were unaware of Plaintiff's injuries at the time of his hospitalizations, this is not determinative of whether their actions, once they were made aware, caused him harm.  Plaintiff's allegations that his bunk assignment presented an "immediate risk" to his health and his cardiac issues became aggravated to the point of hospitalization due to

1  the second-hand smoke and poor ventilation around his bunk suggest that Plaintiff
2  experienced ongoing harm until he was moved away from the complained-of conditions.
3  Construed in a light most favorable to Plaintiff, the Court can plausibly infer that Plaintiff
4  suffered sufficient harm as a result of Defendants' denials of his bunk reassignment
5  requests to support his Eighth Amendment deliberate indifference claims.

6  Defendants further argue that Plaintiff alleges only that Rider, Diaz, and Ryan
7  denied his administrative grievances, and mere denial of grievances is not a sufficient
8  basis to state a constitutional claim.  This argument lacks merit.  Whether a defendant's
9  denial of administrative grievances is sufficient to state a claim of constitutional
10 deprivation depends on several facts.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.
11 1999); *accord Proctor v. Applegate*, 661 F.Supp.2d 743, 765 (W.D. Mich. 2009); *Stocker
12 v. Warden*, No. 1:07-CV-00589, 2009 WL 981323, at *10 (E.D. Cal. Apr. 13, 2009);
13 *Mintun v. Blades*, No. CV-06-139, 2008 WL 711636, at *7 (D. Idaho Mar. 14, 2008).
14 These include whether, at the time of the grievance response, the violation was ongoing,
15 *see e.g., Flanory v. Bonn*, 604 F.3d 249, 256 (6th Cir. 2010), or the unconstitutional
16 conduct was completed, *see Shehee*, 199 F.3d at 300, and whether the defendant
17 responding to the grievance had authority to take action to remedy the alleged violation,
18 *see Bonner v. Outlaw*, 552 F.3d 673, 679 (8th Cir. 2009).  In addition, under Ninth
19 Circuit law, a defendant can be liable for the failure to act.  *See Taylor*, 880 F.2d at 1045;
20 *cf. King v. Zamiara*, 680 F.3d 686, 706 (6th Cir. 2012) (under Sixth Circuit law, liability
21 under § 1983 requires "active unconstitutional behavior; failure to act or passive behavior
22 is insufficient.").  Here, Plaintiff alleges that Rider, Diaz, and Ryan were each made
23 aware of ongoing environmental conditions that were allegedly causing him serious harm
24 but they denied his grievances without proper investigation or consideration of his
25 claims.  Plaintiff has alleged sufficient personal involvement by these Defendants to state
26 Eighth Amendment claims against them.

27 Finally, Defendants argue that Diaz and Ryan are entitled to qualified immunity
28 because their alleged actions did not "'violate clearly established statutory or

1 constitutional rights of which a reasonable person would have known.'" (Doc. 66 at 15, quoting *Cousins v. Lockyer*, 568 F.3d 1063, 1069 (9th Cir. 2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).) They argue, in particular, that a reasonable prison official would not have understood that the denial of Plaintiff's requests for a bunk change due to second-hand smoke violated clearly established rights under either the Eighth Amendment or the ADA. (Doc. 66 at 16.) These arguments are unavailing at this stage of the proceedings. Absent further factual development showing specifically what Defendants either knew about the alleged environmental hazards in Plaintiff's dorm, or what they did to investigate Plaintiff's claims, the Court cannot conclude that Diaz and Ryan's alleged responses to Plaintiff's grievances were objectively reasonable under the circumstances.

For the foregoing reasons, the Court will deny Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claims against Rider, Diaz, and Ryan.

### 2. Marquardt

Defendants argue, and the Court agrees, that Plaintiff fails to state an Eighth Amendment claim against Marquardt. The only allegation Plaintiff makes against Marquardt specifically is that he, along with Ryan, contracted with a vendor to sell tobacco products at ASPC-Kingman. (Doc. 15 ¶ 18.) But the mere approval of the sale of these products at the prison, generally, is insufficient to show that Marquardt acted with deliberate indifference to Plaintiff's serious medical needs. As noted, Plaintiff's allegations also show that prison policies prohibited the use of tobacco products in living quarters. (*Id.* ¶ 21.) Even though Plaintiff alleges that all Defendants knew that inmates regularly violated these regulations and smoked in the area of the dorm where Plaintiff was assigned, Plaintiff alleges no facts showing that Marquardt was aware that Plaintiff was injured or faced the threat of serious injury due to his bunk assignment. Absent any allegations showing that Marquardt was aware of and disregarded a substantial threat of serious harm to Plaintiff, the Court will dismiss Plaintiff's Eighth Amendment claim against him.

### C. Plaintiff's ADA Claims

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A "public entity" is "any State or local government; [or] any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131. Individuals, however, may *only* be sued under the ADA in their official, rather than, their individual capacities. *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (plaintiff cannot sue state officials in their individual capacities to vindicate rights created by Title II of the ADA). To state an ADA claim, a plaintiff must allege facts to support that he "(1) is a handicapped person; (2) he is otherwise qualified; and that the public entity either (3) excluded his participation in or denied him the benefits of a service, program, or activity; or (4) otherwise subjected him to discrimination on the basis of his physical handicap." *Duffy v. Riveland*, 98 F.3d 447, 455 (9th Cir. 1996). The term "qualified individual with a disability" includes "an individual with a disability who, with or without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Claims under the ADA cannot be based on medical treatment decisions. *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005).

Defendants argue that Plaintiff's ADA claims against them in their individual capacities should be dismissed because the ADA does not create individual liability, and these claims should further be dismissed because Plaintiff does not allege that he was deprived of participation in a "service, program, or activity" as a result of an alleged disability. (Doc. 66 at 18.) Defendants are correct. First, to the extent Plaintiff can assert a viable ADA claim, he may sue only the public entity or public official – in this case Ryan – representing that entity, in his official capacity. 42 U.S.C. § 12131; *Vinson*, 288 F.3d at 1156 (9th Cir. 2002). Plaintiff's ADA claims against Defendants in their

1 individual capacities thereby fail as a matter of law.  Second, Plaintiff's allegations that
2 he was denied reassignment to a single-man cell do not show that he was discriminated
3 against *because of* his alleged disability.  Nor do they show he was deprived of
4 participation in any programs for which the ADA requires that reasonable
5 accommodations be made.  To the extent that Plaintiff attempts to assert that he was
6 entitled to an accommodation because his heart condition interfered with his ability
7 simply to be housed as an inmate at ASPC-Kingman, this is not a valid basis for an ADA
8 claim.  *See Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (For purposes of ADA
9 liability, "incarceration, which requires the provision of a place to sleep, is not a
10 'program' or 'activity.'  Sleeping in one's cell is not a 'program, or 'activity.'").  The
11 Court will dismiss Plaintiff's ADA claims.

**IT IS ORDERED:**

(1)   The reference to the Magistrate Judge is withdrawn as to "Plaintiff's Motion for Preliminary Injunction and Emergency Temporary Restraining Order" (Doc. 21); "Defendants Ryan and Diaz's Rule 12(b)(6) Motion to Dismiss Plaintiff's Second Amended Complaint" (Doc. 29), and "Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint" (Doc. 66)..

(2)   "Plaintiff's  Motion for Preliminary Injunction and Emergency Temporary Restraining Order" (Doc. 21) is **denied for lack of jurisdiction**.

(3)   "Defendants Ryan and Diaz's Rule 12(b)(6) Motion to Dismiss Plaintiff's Second Amended Complaint" (Doc. 29) is **denied as moot**.

(4)   "Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint" (Doc. 66) is **granted in part** and **denied in part** as set forth in this Order.

(5)   Plaintiff's Eighth Amendment deliberate indifference claims against Defendant Marquardt and his ADA claims against all Defendants are **dismissed**.

(6) The remaining claims in this action are Plaintiff's Eighth Amendment deliberate indifference claims against Defendants Rider, Diaz, and Ryan.

Dated this 4th day of April, 2016.

*David G. Campbell*
United States District Judge