SKC

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony L. Rodrigues, | No. CV 14-08141-PCT-DGC (ESW) |
| Plaintiff, | |
| v. | **ORDER** |
| Charles L. Ryan, et al., | |
| Defendants. | |

Plaintiff Anthony L. Rodrigues, who is currently confined in the Red Rock Correctional Center (RRCC) in Eloy, Arizona, has filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983. Before the Court is "Plaintiff's Motion for Emergency Temporary Restraining Order and/or Preliminary Injunction" (Doc. 129). The Court will construe Plaintiff's filing as a motion for preliminary injunction, and deny it.[1]

**I.    Background**

This action arises from alleged constitutional and Americans with Disabilities Act (ADA) violations that occurred while Plaintiff was incarcerated at the Arizona State Prison (ASP)-Kingman. (Doc. 15.) On screening pursuant to 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated Eighth Amendment and ADA claims against Defendants Charles L. Ryan, Director of the Arizona Department of Corrections (ADC);

---

[1] Plaintiff's Motion does not meet the standards for a Temporary Restraining Order, which require, among other things, that "the facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b).

1  R. Scott Marquardt, President and CEO of Management Training Corporation; Tara R. Diaz, ADC Contract Beds Bureau Director; and Pamela Rider, Warden at ASP-Kingman's Hualapai Unit, and directed these Defendants to answer the claims against them. (Doc. 16.) The Court dismissed the remaining claims and Defendants. *Id.*

The Court subsequently dismissed all of Plaintiff's ADA claims and his Eighth Amendment deliberate indifference claim against Marquardt. (Doc. 104.) The remaining claims are Plaintiff's Eighth Amendment deliberate-indifference claims against Ryan, Diaz, and Rider based on Plaintiff's assignment to a two-man bunk near where inmates smoked, despite ADC policies prohibiting indoor smoking, resulting in Plaintiff's hospitalization at least twice due to the effects of second-hand smoke.

After filing this action, Plaintiff was transferred to his current location at RRCC. While at this new location, Plaintiff filed a "Motion for Preliminary Injunction and Emergency Temporary Restraining Order" in which he sought a bunk reassignment due to alleged exposure to second-hand smoke at RRCC. (Doc. 21.) He also sought restrictions on transfer to another prison and access to legal materials. (*Id.*) The Court denied that Motion for lack of jurisdiction on the ground that, while some of Plaintiff's alleged issues were factually similar to those alleged in his complaint, "mere similarity of potential future claims does not authorize the Court to order relief outside the scope of the current action." (Doc. 104.)

## II.   Motion for Injunctive Relief

Plaintiff asks the Court "to enjoin and restrain" Defendant Ryan "to cure Defendants' immediate abuses of Plaintiff's federally-protected right to due process and equal protection of the law guaranteed to the Plaintiff by the Fourteenth Amendment to the United States Constitution." (Doc. 129 at 1.) Plaintiff alleges that on May 24, 2016, he began an ADC-mandated Cognitive Restructuring Personal Development Program at RRCC. (*Id.* at 2.) As a result, he is required "to actively participate and complete a variety of in and out of classroom assignments for a period of six weeks," and failure to do so will subject him to sanctions, including loss of earned incentive privileges. (*Id.*)

1    Plaintiff alleges that this program is "disrupting ever[y] facet of [his] time sensitive
2    discovery and trial preparation, prejudicing the Plaintiff" in this action. (*Id.*) On May 27,
3    2016, Plaintiff advised Correctional Officer (CO) III Bolding that he did not want to have
4    to pursue an emergency protective order to obtain a "temporary waiver" from the class,
5    and Bolding responded by saying: "You'll just be moved from this facility." (*Id.*)[2]
6    Bolding's response caused Plaintiff to experience an acute attack of angina, prompting
7    Bolding to tell him to take a seat and causing Plaintiff to have to take a nitroglycerin
8    tablet in addition to the nitroglycerin patch he already wears to manage his cardiac issues.
9    (*Id.* at 2-3.) That same day, Bolding delivered more than 800 pages of discovery
10   documents to Plaintiff and advised him that she had spoken to her immediate supervisor,
11   CO IV Hendricks, who reaffirmed that Plaintiff's participation in the Program was
12   mandatory. (*Id.*) CO III Westmoreland, who was also present, told Plaintiff his medical
13   problems were self-inflicted and he should take up his programming issues with Medical
14   by filing a health needs request (HNR). (*Id.*) Westmoreland offered to deliver an HNR
15   to Medical personally to expedite the process. (*Id.*)

16   Plaintiff asks the Court to "immediately enjoin and restrain" Ryan and his
17   employees (1) "from mandating Plaintiff's participation in any and all ADC personal
18   development programming and activities during the pendency of the instant action,"
19   (2) "from transferring or removing the Plaintiff from [his] present place of incarceration
20   without first seeking District Court consent," (3) from taking what could be inferred as
21   retaliatory actions against him and anyone providing him material or testimonial support
22   in this action, and (4) from interfering with Plaintiff's right to compulsory discovery by
23   "seizing Plaintiff's trial preparation material or in any manner frustrating or impeding"
24   his constitutionally protected due process and equal protection rights. (*Id.* at 3-4.)

---

[2] The context and factual circumstances are less than clear from Plaintiff's Motion. Defendants provide evidence that Bolding teaches the Cognitive Restructuring Class at RRCC. (Doc. 142 at 3.) In accord with Plaintiff's allegations, Bolding testifies that Plaintiff stopped her while she was walking with another Detention Officer to ask for a waiver from the class due to his pending litigation, and Plaintiff stated that unless he got a waiver, he would have to file a temporary restraining order against her. (Doc. 142-1 ¶¶ 23-29.)

### III. Legal Standard

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. "But if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Under this variant of the *Winter* test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez*, 680 F.3d at 1072.

Regardless of which standard applies, the movant "has the burden of proof on each element of the test." *See Envtl. Council of Sacramento v. Slater,* 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000). Further, there is a heightened burden where a plaintiff seeks a mandatory preliminary injunction, which should not be granted "unless the facts and law clearly favor the plaintiff." *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1441 (9th Cir. 1986) (citation omitted). The Prison Litigation Reform Act imposes additional requirements on prisoner litigants who seek preliminary injunctive relief against prison officials and requires that any injunctive relief be narrowly drawn and the least intrusive means necessary to correct the harm. 18 U.S.C. § 3626(a)(2); *see Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

/ / /

/ / /

## IV. Discussion

Defendants argue that, to the extent Plaintiff's Motion addresses events that allegedly occurred at RRCC, not ASP-Kingman, it should be denied because the relief he seeks as to mandatory programming, restrictions on transfers, and access to his legal materials is outside the scope of the operative complaint. (Doc. 142 at 5-6.)[3] They further argue that Plaintiff fails to make the necessary showings for injunctive relief because he fails to show that (1) he is likely to succeed on the merits in this action, (2) he is likely to suffer irreparable harm absent an injunction, (3) the balance of the equities tips in his favor, and (4) an injunction is in the public interest. (Doc. 142 at 5-10.)

Defendants are correct that the injunctive relief Plaintiff seeks on mandatory class participation and other issues at RRCC is entirely separate from the relief he seeks in his underlying Complaint. The Ninth Circuit has held that "absent [a] relationship or nexus" between the preliminary injunction and the underlying complaint, "the district court lacks authority to grant the relief requested." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015). This Court has recognized a narrow exception to this rule, however, when the requests for injunctive relief are related to a plaintiff's access to the district court in pending litigation. *Prince v. Schriro*, CV 08-1299-PHX-SRB, 2009 WL 1456648, at *4 (D. Ariz. May 22, 2009) (citing *Diamontiney v. Borg*, 918 F.2d 793, 796 (9th Cir. 1990)).

Plaintiff alleges that mandatory participation in ADC's Cognitive Restructuring Program interferes with his discovery and trial preparation in this action. (Doc. 129 at 2.) He requests that the Court enjoin Ryan and those acting under Ryan's authority from mandating his participation in this program and any other programs or activities, specifically "during the pendency of the instant action." (*Id.* at 3.) Plaintiff's other

---

[3] Defendants submitted two responses to the instant Motion because they have different counsel representing them as to Plaintiff's alleged issues at RRCC and ASP-Kingman. (Doc. 141 at 1-2, Doc. 142 at 1, n. 1.) In the separate response submitted by ASP-Kingman counsel, Defendants argue that, to the extent the Motion addresses events that allegedly occurred at ASP-Kingman, it should be denied because the injunctive relief Plaintiff seeks is completely separate from those alleged occurrences. (Doc. 141 at 2-3.)

requests for relief likewise all relate in some way to his ability to litigate his current claims. Although not clear from the Motion, it appears that Plaintiff's request for restrictions on transfers from his current location relates, in part, to his asserted need to give his "immediate, undivided attention" to this litigation. (*Id.* at 2.) His requests that the Court enjoin Ryan and his subordinates from taking retaliatory action against him, or against anyone providing him "material or testimonial support," or from interfering with his right to discovery by "seizing Plaintiff's trial preparation materials," are also related to his ability to pursue this case. (*See id.* at 4.) Moreover, Plaintiff seeks an injunction as to ADC policies and the actions of personnel allegedly under Ryan's control, and Ryan is a party to this action. Under these circumstances, the Court is not persuaded, as Defendants argue, that Plaintiff's requests for injunctive relief should be denied as being "wholly outside" the issues presented in this action. (*See* Doc. 142 at 6 (quoting *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945).)

The Court will nonetheless deny the Motion because Plaintiff's allegations of injury are too vague and speculative to show he is currently suffering or is likely to suffer irreparable harm absent the Court's intervention. *See Conn. v. Mass.*, 282 U.S. 660, 674 (1931) (an injunction is only appropriate "to prevent existing or presently threatened injuries"); *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F. 2d 668, 674-675 (9th Cir. 1988) (speculative injury does not constitute irreparable harm sufficient to warrant granting a preliminary injunction). Plaintiff broadly asserts that his mandatory programming at RRCC is "disrupting ever[y] facet of [his] time sensitive discovery and trial preparation, prejudicing the Plaintiff" in this action. (Doc. 129 at 2.) But he provides no facts about how often he must attend class or the types of assignments he must complete.[4] Nor does he provide any facts about how these obligations are impeding his ability to complete particular time-sensitive deadlines in this action. Similarly, Plaintiff asks the Court to enjoin transfers from his current location, retaliation against

---

[4] Defendants provide evidence that the class meets one time a week for two hours and requires twenty minutes a week of homework. (Doc. 142 at 3.)

- 6 -

1   him, and interference with discovery, but he provides no facts to show that he is currently
2   experiencing or likely to experience any of these things. Plaintiff merely states that he
3   incorporates "all papers, readings, and motions which are part of the record in the above
4   case." (Doc. 129 at 2, 4.) This is not sufficient. As the movant, Plaintiff "must do more
5   than merely allege imminent harm sufficient to establish standing; a plaintiff must
6   demonstrate immediate threatened injury as a prerequisite to preliminary injunctive
7   relief." *Caribbean*, 844 F.2d at 674 (internal citations omitted). In addition, a motion for
8   preliminary injunction, including the likelihood of irreparable harm, must be supported
9   by "[e]vidence that goes beyond the unverified allegations of the pleadings." *Fidelity*
10  *Nat'l Title Ins. Co. v. Castle*, C 11-0896 SI, 2011 WL 5882878, at *3 (N.D. Cal. Nov. 23,
11  2011) (internal citation omitted).[5]

12  Plaintiff's attempts to provide additional evidence in his reply do not cure these
13  deficiencies. Plaintiff attaches a copy of ADC Department Order 809 pertaining to
14  earned incentives, a printout of his "Inmate Time Computation," and affidavits of other
15  inmates attesting to his angina attack. (Doc. 151 at 5-17.) But he fails to connect this
16  evidence to any of the issues raised in his Motion. As to his purported discovery
17  concerns, Plaintiff's own allegations show he was provided over 800 pages of discovery
18  material, and he does not allege that anything was kept from him. (Doc. 129 at 3.) As to
19  his angina attack that allegedly resulted from his conversation with Bolding seeking a
20  waiver, Plaintiff alleges that CO III Westmoreland advised him at the time to address his
21  programming concerns with Medical and even offered to deliver an HNR for Plaintiff to
22  expedite the process. (*Id.*) Plaintiff has not shown that he sought help from Medical on
23  this issue or for any medical needs related to this incident. Moreover, Defendants
24  provide evidence that Plaintiff has never filed any grievances to attempt to resolve his
25  programming issue, though the process for doing so is available to him. (Doc. 142-2 ¶¶

---

27  [5] Although the pleadings in this action include Plaintiff's verified Complaint, which may be used as evidence, this does not help. Plaintiff does not point to any sworn statements in the Complaint to support his allegations of harm. Moreover, as already noted, the allegations in the Complaint pertain solely to actions that took place at ASP-Kingman, not to the harm Plaintiff allegedly faces at RRCC.

- 7 -

4-6, 41.)  On this record, Plaintiff fails to show he is likely to suffer irreparable harm absent injunctive relief.  Given this shortcoming in Plaintiff's motion, the Court need not address the other requirements for preliminary injunctive relief.

**IT IS ORDERED** that the reference to the Magistrate Judge is withdrawn as to Plaintiff's Motion for Preliminary Injunction (Doc. 129), and the Motion is **denied**.

Dated this 6th day of September, 2016.

David G. Campbell
United States District Judge