SKC

**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony L. Rodrigues, | No.   CV 14-08141-PCT-DGC (ESW) |
| Plaintiff, | |
| v. | **ORDER** |
| Charles L. Ryan, et al., | |
| Defendants. | |

Plaintiff Anthony L. Rodrigues, who is currently confined in the Red Rock Correctional Center in Eloy, Arizona, brought this civil rights case pursuant to 42 U.S.C. § 1983.   Defendants Rider, Diaz, and Ryan now move for summary judgment. (Doc. 166.)  The Court issued a notice, as required under *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (*en banc*), informing Plaintiff of his right to respond and the requirements for doing so (Doc. 169), and Plaintiff filed a response (Doc. 192).   The Court will grant the motion for summary judgment.

**I.    Background.**

This action arises from alleged constitutional and Americans with Disabilities Act (ADA) violations that arose while Plaintiff was incarcerated at the Arizona State Prison (ASP)-Kingman.   (Doc. 15.)   In his two-count second amended complaint, Plaintiff names as Defendants Charles L. Ryan, Director of the Arizona Department of Corrections (ADC); R. Scott Marquardt, President and CEO of Management Training Corporation (MTC); Tara R. Diaz, ADC Contract Beds Bureau Director; and Pamela

1   Rider, Warden at ASP-Kingman's Hualapai Unit.  (*Id.* at 2.)  On screening pursuant to 28

2   U.S.C. § 1915A(a), the Court determined that Plaintiff stated Eighth Amendment and

3   ADA claims in count two and directed Defendants to answer these claims.  (Doc. 16.)

4   The Court dismissed count one and the remaining claims in count two.  *Id.*  The Court

5   subsequently dismissed Defendant Marquardt and Plaintiff's ADA claims in count two.

6   (Doc. 104.)  The remaining claims in this action are Plaintiff's Eighth Amendment claims

7   in count two against Defendants Rider, Diaz, and Ryan (hereinafter "Defendants").

8       The remaining claims are based on the following allegations.  Plaintiff has a

9   documented cardiac condition for which he is receiving treatment.  On November 26,

10  2013, Plaintiff was sanctioned for two unexcused absences from a life skills class.  As a

11  result, Plaintiff lost his preferred housing and was reassigned to a two-man bunk located

12  in the rear of the dorm, where inmates smoked despite ADC policies prohibiting indoor

13  smoking.  After his housing reassignment, Plaintiff was hospitalized at least twice due to

14  the effects of second-hand smoke.  Plaintiff requested from at least January 2, 2014 to be

15  reassigned to a new bunk away from the smoking, but he was not moved until June 2014.

16  Defendants were aware of the environmental conditions that were causing Plaintiff

17  serious harm, but they denied his grievances without proper investigation or

18  consideration of his claims.  (Doc. 15.)

19  **II.   Legal Standards.**

20      **A.   Summary Judgment.**

21      A court must grant summary judgment "if the movant shows that there is no

22  genuine dispute as to any material fact and the movant is entitled to judgment as a matter

23  of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

24  (1986).  The movant bears the initial responsibility of presenting the basis for its motion

25  and identifying those portions of the record, together with affidavits, if any, that it

26  believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at

27  323.

28

1    If the movant fails to carry its initial burden of production, the nonmovant need

2    not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d

3    1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the

4    burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that

5    the fact in contention is material (a fact that might affect the outcome of the suit under the

6    governing law) and that the dispute is genuine (the evidence is such that a reasonable jury

7    could return a verdict for the nonmovant). *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

8    242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th

9    Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its

10   favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968), but it

11   must "come forward with specific facts showing that there is a genuine issue for trial,"

12   *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

13   (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

14   The judge's function is not to weigh the evidence and determine the truth, but to

15   determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The

16   court must believe the nonmovant's evidence and draw all inferences in the nonmovant's

17   favor. *Id.* at 255. The court need consider only the cited materials, but it may consider

18   any other materials in the record. Fed. R. Civ. P. 56(c)(3).

19   **B.    Eighth Amendment.**

20   To state an Eighth Amendment conditions-of-confinement claim, plaintiffs must

21   meet a two-part test. "First, the alleged constitutional deprivation must be, objectively,

22   sufficiently serious" such that the "official's act or omission must result in the denial of

23   the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825,

24   834 (1994) (internal quotations omitted). Second, the prison official must have a

25   "sufficiently culpable state of mind," that is, he must act with "deliberate indifference to

26   inmate health or safety." *Id.* (internal quotations omitted). Deliberate indifference is a

27   higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Id.*

28   at 835. In defining "deliberate indifference" in this context, the Supreme Court has

1   imposed a subjective test: "the official must both be aware of facts from which the

2   inference could be drawn that a substantial risk of serious harm exists, *and* he must also

3   draw the inference." *Id*. at 837 (emphasis added).

4   **III.    Relevant Facts.**[1]

5        At all relevant times in this action, Plaintiff was an inmate at ASP-Kingman.

6   (Doc. 15 at 1.)  Plaintiff was sanctioned in November 2013 for two unexcused absences

7   in a life skills class, and he lost his "phase III" privileges, including preferred housing.

---

[1] These facts are drawn from Defendants' Statement of Facts and supporting exhibits (Docs. 167, 167-1, -2, -3, -4, -5, -6 -7, -8, -9, -10, -11, -12, -13, -14, -15, -16.), and Plaintiff's "Separate Statement of Disputed Facts in Opposition to Defendants' Motion for Summary Judgment" and supporting exhibits (Doc. 193, 193-1, -2, -3, -4 ,-5).

Plaintiff fails to comply with Local Rule 56.1(b) and the Court's August 26, 2016 order, which requires, in part, that he set forth "for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph," and that he then set forth any additional relevant facts in separately numbered paragraphs.  (*See* Doc. 81 at 2 (quoting LRCiv 56.1(b)).)  Instead, Plaintiff submits only his own, independent 26-page statement of facts without reference to Defendants' facts or to facts in dispute.  Plaintiff's failure to comply with the rules and the Court's guidance significantly added to the Court's time and effort in attempting to determine which of Plaintiff's statements of fact merely restate or overlap with Defendants' statements of fact, which provide relevant additional facts, and which contain or attempt to raise genuine factual disputes.

Many of Plaintiff's facts also appear to pertain to his ADA claims, which have been dismissed, or to events outside the relevant time period of Plaintiff's remaining claims.  In addition, Defendants object to a number of Plaintiff's supporting documents as being previously undisclosed or outside the scope of discovery, and they object to portions of all 78 of Plaintiff's statements of fact as being either irrelevant or unsupported.  (*See* Doc. 199.)

The Court is mindful of the Ninth Circuit's overarching caution in this context that district courts are to "construe liberally motion papers and pleadings filed by pro se inmates and . . . avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).  For this reason, where the Court is able to identify relevant facts in Plaintiff's Statement of Facts that are supported by admissible evidence, it has done so.  The Court has not, however, relied on any of the documents Defendants object to as being previously undisclosed and outside the scope of relevant discovery (*see* Doc. 199 at 2), and has not relied on any of Plaintiff's unsupported assertions unless they also appear in sworn statements that are within the scope of Plaintiff's personal knowledge. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (allegations in a pro se plaintiff's pleadings must be considered as evidence in opposition to summary judgment where the contentions are based on personal knowledge and attested to under penalty of perjury.)

1    (*Id.* ¶ 4.)  As a result, Plaintiff was moved from a one-person cell to a two-man bunk in

2    the rear of his assigned dorm.  (*Id.* ¶ 14.)

3         On January 3, 2014, Plaintiff filed an inmate letter, in which he alleged that his

4    unexcused absences stemmed from his having a cardiac condition, and claimed that the

5    resulting sanctions had been imposed on him in violation of his equal protection and due

6    process rights.    (Doc. 167 ¶ 7; Doc. 167-1.)    Plaintiff requested a "reasonable

7    accommodation" that would permit him to participate in prison programming without the

8    threat of losing privileges due to his disability.  (Doc. 167-1.)

9         On February 12, 2014, Plaintiff filed an informal complaint resolution form, in

10   which he again requested a reasonable accommodation for his medical issues, and

11   requested the reinstatement of his phase III status.  (Doc. 167-2.)  Plaintiff also alleged

12   that Defendant Rider had responded to his inmate letter, but had failed to address

13   Plaintiff's request for reasonable accommodations or to investigate the factual bases for

14   Plaintiff's request.  (*Id.*)

15        On March 6, 2014, Plaintiff filed another inmate letter, stating that he had not

16   received a response to his February 12, 2014 request for resolution.  (Doc. 167-3.)  The

17   inmate letter also referenced a "separate and distinct issue," that – according to ADC

18   policy – had to be raised in a new grievance, but it is not clear from the inmate letter what

19   the other issue was.  (*Id.*)[2]

20        On March 8, 2014, Plaintiff received a health services communique from ADC,

21   informing him that all of his special needs orders (SNOs) had expired and, to have them

22   renewed, Plaintiff should submit new health needs requests (HNRs).  (Doc. 167-4.)

23        On March 10, 2014, Plaintiff filed an inmate grievance in which he complained

24   that he had separately attempted to resolve his equal protection and due process issues

25   and his ADA issues, but these attempts had been unsuccessful.  (Doc. 167-5.)  In the

26   proposed resolution portion of the grievance, Plaintiff requested, for the first time on

27   record, "to be assigned to a bed in a cubicle to eliminate environmental stress resulting

28

> [2] The letter refers to attachments, but they are not in evidence.  (*See* Doc. 167-3.)

1    from over crowding and exposure to (illegible) due to poor air circulation and second

2    hand smoke." (*Id.*)

3        On April 2, 2014, Rider responded to Plaintiff's request to be moved "into a

4    cubicle to 'eliminate environmental stress' due to poor circulation and second hand

5    smoke." (Doc. 167 ¶ 20; Doc. 167-6.) Rider wrote,

6
7
8        You stated you have an ADOC recognized disability,
         however upon investigation of this claim I have found that
         you do not have any ADOC recognized disability that
         requires these accommodations. Medical records indicate
         you do not have any Special Needs Orders at this time. I
         consider this issue resolved.
9
10
11   (*Id.*)

12       Plaintiff appealed Rider's response to Defendant Diaz, and Diaz concurred with

13   Rider that Plaintiff had not shown he had an ADC or ADA recognized disability and had

14   not been issued an SNO for special bed placement. (Doc. 167-10.) Diaz also cited ADC

15   policy requiring that staff members and inmates be at least 20 feet away from any

16   building entrance to smoke and stated that ASP-Kingman staff members regularly

17   discipline inmates caught smoking in unauthorized areas. (*Id.*) She advised that if

18   Plaintiff required special bed placement for a medical issue he would need to submit an

19   HNR. (*Id.*)

20       On May 12, 2014, Plaintiff appealed Diaz's response to Defendant Ryan, claiming

21   that Diaz's statements were indicative of "an administration deliberately indifferent to the

22   specialized needs of a divergent inmate population challenged by disability while

23   mitigating [Plaintiff's] exposure to second-hand smoke after having suffered [a series of

24   cardiac-related issues]." (Doc. 167-11.) On May 29, 2014, Ryan denied this appeal.

25   (*Id.*)[3] Ryan's response reiterated that smoking is prohibited in enclosed areas, staff and

26   inmates are expected to comply with this restriction and will be disciplined if caught, and

27

28       [3] An ADC Appeals Officer signed the grievance appeal response on Ryan's
     behalf. (Doc. 167-12.)

1    Plaintiff may inform staff of violations by providing the relevant names, dates, and times,

2    to have corrective action taken.  (Doc. 167-12.)  Ryan's response concluded that "[u]nless

3    you have a medical necessity to be moved, you will remain at your current housing

4    location."  (*Id.*)

5         In June 2014, unidentified senior staff authorized Plaintiff to be reassigned to a

6    single-living space at the front of the dorm.  (Doc. 15 ¶ 34.)  According to Plaintiff, this

7    was done in response to security concerns and so corrections personnel could observe and

8    monitor Plaintiff's health and welfare.  (*Id.*)

9    **IV.    Discussion.**

10        Defendants argue that they are entitled to summary judgment on Plaintiff's Eighth

11   Amendment claims because Plaintiff has not established either that he suffered an

12   objectively serious deprivation or medical need associated with his bunk assignment, or

13   that Defendants acted with deliberate indifference to his health or safety when they failed

14   to order that he be returned to a single-person cell.  (Doc. 166 at 8-12.)  Plaintiff does not

15   directly address these arguments in his response.  Instead, he largely restates the factual

16   assertions in his separate statement of facts and argues in conclusory fashion that the

17   evidence he presents raises issues of material fact that preclude summary judgment.  (*See*

18   Doc. 192 at 2-16, 16-17.)  In light of Plaintiff's pro se status, the Court will endeavor,

19   where relevant, to connect Plaintiff's factual assertions and available evidence to his

20   Eighth Amendment claims.  Additionally, as previously noted, wherever there is a

21   genuine dispute as to any material fact, the Court will take Plaintiff's version of the facts

22   as true and draw all reasonable inferences in Plaintiff's favor.  *See Anderson*, 477 U.S. at

23   255.

24        **A.    Serious Deprivation or Medical Need.**

25        A prisoner can make an Eighth Amendment claim based on involuntary exposure

26   to second-hand smoke.  *Helling v. McKinney*, 509 U.S. 25, 35 (1993).  To prove the

27   objective part of such a claim, the inmate must show that he was exposed to

28   "unreasonably high" levels of smoke and that the risk from this exposure was such that it

1    "violates contemporary standards of decency."  *Id.* at 36; *see also Carroll v. DeTella*, 255

2    F.3d 470, 472 (7th Cir. 2001) ("The Eighth Amendment does not require prisons to

3    provide prisoners with more salubrious air, healthier food, or cleaner water than are

4    enjoyed by substantial numbers of free Americans.").  Defendants argue that Plaintiff

5    fails to provide proof that he was exposed to any particular quantity of second-hand

6    smoke or airborne contaminants likely to cause him serious harm.  (Doc. 166 at 9.)  The

7    Court agrees.

8         Plaintiff alleges in the second amended complaint that he was moved to an area at

9    the rear of the dorm that was a "known location" for "illicit drug[-]related activity,

10   violent assaults, indoor smoking, poor air circulation, ventilation and cooling."  (Doc. 15

11   ¶ 14.)  But Plaintiff fails to point to any evidence to show that such activities actually

12   took place while he was assigned to this area of the dorm.  Plaintiff also asserts in his

13   declaration that "between February 2012 and July 2015" it was "common practice" for

14   prison staff to fail to enforce ADC policy "prohibiting the use of smoking tobacco in

15   inmate housing and common areas."  (Doc. 193-1 at 4.)  Once again, however, Plaintiff

16   fails to provide any specific facts about what occurred in his bunk area from the time he

17   was moved there in November 2013 until he was reassigned to a single-person cell in

18   June 2014.  Absent facts showing when, where, and how often inmates smoked and in

19   what proximity to Plaintiff, the above assertions are too general to show that Plaintiff was

20   exposed to unreasonably high levels of smoke that subjected him to a substantial risk of

21   serious harm.

22        Plaintiff's assertions that he had to be hospitalized due to the effects of second-

23   hand smoke at the rear of the dorm are similarly unsupported.  Plaintiff states in his

24   declaration that "on at least (2) separate occasions in 2013" he was "hospitalized due to

25   complications attributable to environmental stress and exposure to second hand smoke

26   present in [his] assigned housing area."  (Doc. 193-1 at 2.)  But Plaintiff has not provided

27   any facts about when and under what circumstances these hospitalizations occurred, and

28   it is not clear from his general statement that these hospitalizations even took place after

1    his move to the rear of the dorm.  Even assuming they did, Plaintiff provides no

2    hospitalization records, doctor's reports, or medical opinion evidence to support that he

3    was suffering from or had to be treated for complications from second-hand smoke.  On

4    this record, Plaintiff fails to produce sufficient evidence to show or create a genuine issue

5    of material fact that the conditions of confinement at the rear of the dorm subjected him

6    to a substantial risk of serious harm.

7         Absent a showing on the objective prong of Plaintiff's claim, the Court need not

8    consider the subjective prong.  *Helling*, 509 U.S. at 35.  The Court will nonetheless

9    address this prong as an alternative ground for summary judgment.

10        **B.    Deliberate Indifference.**

11        Defendants argue, and the Court agrees, that Plaintiff's Eighth Amendment claims

12   additionally fail because Plaintiff fails to show that Defendants acted with deliberate

13   indifference to his health or safety.  As noted, mere negligence or lack of ordinary due

14   care are not sufficient to show deliberate indifference; rather the accused official must

15   "be aware of facts from which the inference could be drawn that a substantial risk of

16   serious harm exists," actually draw the inference, and disregard the risk to the inmate's

17   health or safety.  *Farmer*, 511 U.S. at 837.

18        Plaintiff's claim against Rider rests on Rider's denial of Plaintiff's March 10, 2014

19   inmate grievance, in which Plaintiff requested to be moved to a single-person cell due to

20   the "environmental stress" from over-crowding, poor air circulation, and second-hand

21   smoke in his assigned area of the dorm. (Doc. 167-5.)  In his denial of Plaintiff's request,

22   Rider explained that his investigation showed that Plaintiff did not have a disability that

23   required special accommodations and that Plaintiff did not have any SNOs at the time.

24   (Doc. 167-6.)  This response does not show that Rider deliberately disregarded Plaintiff's

25   complaint.  Rather, Rider pointed to a lack of evidence to support that Plaintiff had a need

26   for the requested accommodation.  Plaintiff does not point to any contrary evidence from

27   which Rider could have inferred and did infer that, absent an immediate move, Plaintiff

28   faced a substantial risk of serious harm to his health.  Moreover, the evidence shows that

1    Plaintiff had been advised prior to filing his inmate grievance that his existing SNOs had

2    expired and he would need to file new HNRs to renew them.  Plaintiff does not show that

3    he filed any HNRs with respect to his exposure to second-hand smoke prior to Rider's

4    review of his grievance or that he attempted to do so based on Rider's response.

5    Although Plaintiff evidently would have preferred to have Rider grant his request to

6    move without his first having to obtain an SNO documenting his medical needs for such

7    a move, that she did not do so, while less convenient for Plaintiff, does not show that she

8    acted with deliberate indifference to a serious threat to Plaintiff's health.

9           Plaintiff's claims against Diaz and Ryan also rest solely on their denials of

10   Plaintiff's grievance appeals.  As with Rider, these denials do not show that Diaz or Ryan

11   knew of and acted with deliberate indifference to a serious threat to Plaintiff's health.  In

12   her response to Plaintiff's inmate grievance appeal, Diaz reviewed and concurred with

13   Rider's findings that Plaintiff did not have an SNO for special bed placement, and she

14   further advised Plaintiff that if he required such placement for a medical issue he would

15   need to "submit an HNR through the appropriate channels."  (Doc. 167-10.)  Similarly,

16   Ryan advised Plaintiff to inform staff of any smoking violations and informed him he

17   would not be moved absent a showing of "medical necessity."  (Doc. 167-12.)  Again,

18   Plaintiff does not point to any evidence from which Diaz or Ryan could have inferred and

19   did infer that, absent an immediate move, Plaintiff faced a substantial risk of serious

20   harm, and Plaintiff does not show that he filed any HNOs requesting accommodations for

21   his medical needs or that he made any attempts to report known smoking violations to

22   housing staff.  On this record, the Court cannot conclude that Diaz or Ryan acted with

23   deliberate indifference to a serious threat to Plaintiff's health.

24          In summary, Plaintiff has failed to produce sufficient evidence to support either

25   the objective or subjective prongs of his Eighth Amendment claims.

26   **IT IS ORDERED:**

27          (1)     The reference to the Magistrate Judge is **withdrawn** as to Defendants'

28   Motion for Summary Judgment (Doc. 166).

1       (2)     Defendants' Motion for Summary Judgment (Doc. 166) is **granted**, and the

2  action is terminated with prejudice.  The Clerk of Court must enter judgment accordingly.

3       Dated this 27th day of February, 2017.

David G. Campbell
United States District Judge